IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:14-cv-336-FDW
(3:09-cr-008-FDW-1)

| | | |
|---|---|---|
| CLEVO SHUFF, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and on the Government's Motion to Dismiss (Doc. No. 6).

**I. BACKGROUND**

A. Petitioner is arrested for drug trafficking.

On October 17, 2008, Petitioner called his co-conspirator, Julius Alexander, to tell him that "he had just robbed some guys for some cocaine and he wanted [Alexander] to come check it out" to see if Alexander wanted to buy some to re-sell. See (Crim. No. 3:09cr8-FDW-1, Doc. No. 71 at 136: Trial Tr.). Alexander agreed and also told Petitioner that he wanted an ecstasy pill. (Id.). Alexander drove to the house where Petitioner was located, and Petitioner came out of the house and got into Alexander's car. (Id.). Meanwhile, officers with the Charlotte-Mecklenburg police department were conducting an unrelated investigation into the theft of a handgun, and, as part of that investigation, went to the last known address of the gun's rightful owner to discuss the matter. (Id., Doc. No. 49 at ¶ 8: PSR). As it happened, the officers wound

1

up at the same residence as Petitioner and Alexander at the same time that they were sitting in Alexander's car discussing the stolen cocaine. (Id.; see also Doc. No. 81 at 3: Sealed Sentencing Mem.).

Believing that one of the two men must be the rightful gun owner that they were there to meet, the officers approached the car. (Id., Doc. No. 49 at ¶ 8). When Petitioner saw the officers, he "put his hand on his gun" and said, "I'm going to shoot." (Id., Doc. No. 81 at 3). Alexander "pleaded" with Petitioner not to shoot because "this [was] [their] lives in jeopardy." (Id.). Petitioner ultimately decided not to shoot at the officers because he knew that if he did, "they gonna kill [him] and [his] cousin." (Id., Doc. No. 49 at ¶ 10; Doc. No. 81 at 3).

The officers opened the car door and asked the men to step out, at which point officers recognized Petitioner from previous encounters involving drug trafficking. (Id., Doc. No. 49 at ¶ 8). The officers also immediately observed a handgun in Petitioner's waist. (Id.). They subsequently searched him and found a loaded 9-millimeter handgun, 23.5 grams of crack, marijuana, an ecstasy pill, and $1,250 in cash. (Id.). Alexander consented to a search of his person, resulting in the seizure of more crack cocaine and a cell phone. (Id. at ¶ 9). Alexander pled guilty and testified against Petitioner at trial. (Id., Doc. No. 71 at 127-43). As part of his testimony, Alexander recounted that, in addition to the drugs seized on the day of their arrests, Petitioner had sold him an ounce of crack cocaine (28 grams) every other month for a two-year period for Alexander to re-sell. (Id. at 132).

      B.      Petitioner is charged with federal drug and firearm offenses.

On January 21, 2009, a federal grand jury in the Western District of North Carolina charged Petitioner and Alexander with conspiring to distribute at least 50 grams of crack cocaine, in violation of 21 U.S.C. § 846; possession with intent to distribute at least five grams of

crack cocaine, in violation of 21 U.S.C. § 841; and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (Id., Doc. No. 12: Indictment). After a trial, a jury convicted Petitioner of all counts. (Id., Doc. No. 43: Jury Verdict). Petitioner was also charged with possession of a firearm by a convicted felon, but the Government dismissed this count before the case went to the jury.

The jury found that Petitioner was responsible for at least 50 grams of crack cocaine for the conspiracy count, and between 5 and 50 grams of crack cocaine for the possession count. (Id.). Before the sentencing hearing, a probation officer prepared a pre-sentence report ("PSR"), calculating the drug amount attributable to Petitioner (169.75 grams of crack cocaine, 18.1 grams of marijuana, and 1 ecstasy pill) and summarizing Petitioner's criminal history. With the drug amount found by the jury (in excess of 50 grams of crack cocaine) and Petitioner's two prior convictions for drug trafficking, the probation officer noted that Petitioner faced mandatory life imprisonment for the conspiracy count and also recommended that he be designated a career offender. (Id., Doc. No. 49 at ¶¶ 18; 24; 74-75). The Court subsequently sentenced Petitioner to a statutorily mandated life sentence for the conspiracy count, a concurrent 360-month sentence for the distribution count, and a consecutive 60-month sentence for the firearm count. (Id., Doc. No. 57: Judgment).

Petitioner appealed his conviction and sentence, raising two issues relating to the trial and whether his prior convictions for drug trafficking could be used to enhance his sentence in light of the Fourth Circuit's en banc decision in United States v. Simmons, 649 F.3d 237 (4th Cir. 2011). The Fourth Circuit affirmed Petitioner's conviction and the sentence for the § 924(c) count, but vacated the sentences for the drug trafficking counts and remanded to this Court for resentencing on those counts. United States v. Shuff, 470 F. App'x 158, 160-62 (4th Cir. 2012).

3

C. This Court re-sentences Petitioner to 240 months of imprisonment on the drug trafficking counts.

Before re-sentencing, a probation officer prepared a supplement to the pre-sentence report, taking into account the retroactive crack reduction provided in Amendment 750 to the Sentencing Guidelines and the invalidity of Petitioner's prior convictions to enhance his sentence. (Id., Doc. No. 84: Supplemental PSR). The probation officer calculated a base offense level of 28 (based on the same drug amounts as alleged in the original PSR) and a criminal history category V, yielding an advisory guideline range of 130 to 162 months of imprisonment. (Id. at ¶¶ 9; 11; 13). The probation officer also noted that the conspiracy count carried a statutory minimum term of imprisonment of ten years and a maximum of life imprisonment, and the distribution count carried a mandatory minimum five-year sentence and a maximum 40-year sentence. (Id. at ¶ 12).

Both parties moved for a departure and/or variance prior to sentencing. (Id., Doc. Nos. 81; 86). Petitioner moved for a downward departure or variance from the guideline range based on his post-sentencing rehabilitation, whereas the Government objected to the drug amount alleged in the PSR and the lack of any role enhancement. (Id.). In support of its objections, the Government contended that Petitioner should be held responsible for 476 grams of crack cocaine based on the amount officers found on Petitioner the day of his arrest, plus Alexander's testimony that he received an ounce of crack from Petitioner every other month for two years prior. (Id., Doc. No. 81 at 2). The Government also argued that Alexander's testimony demonstrated Petitioner exercised control over Alexander, warranting a two-level enhancement. (Id.). Petitioner, however, contended that the mandate rule precluded the Government from lodging these objections at the re-sentencing hearing when it failed to object at the first

4

sentencing hearing. (Id., Doc. No. 96 at 9-10: Resent. Tr.).

After considering the parties' arguments, the Court concluded that "judicial restraint suggests to [the court] that [it] ha[s] to agree with the defendant that although these issues were out there at the time of the original sentencing, the Court didn't properly address them, the government didn't press them, and they can't be raised today because of the remand rule." (Id. at 11). The Court continued, though, that it was permitted to consider the arguments concerning drug amount and supervisory role in the context of its determination of "a just and reasonable sentence," and that this determination included "everything that is within the nature and the circumstances of the crime of conviction." (Id. at 12).

The Court thus found that the guidelines provided for an offense level 28, criminal history category V, and an advisory range of 130 to 162 months of imprisonment. (Id. at 24; 32). In arguing for a specific sentence, Petitioner sought a departure or a variance below this range based on his post-sentencing rehabilitation, id. at 33-34, while the Government sought an upward variance to 480 months, highlighting Petitioner's "life of crime," the "true drug amounts," Petitioner's leadership role over Alexander, and his dangerousness, id. at 38-43.

The Court began the explanation of its chosen sentence by examining the 18 U.S.C. § 3553(a) factors, finding that "the full details of [Petitioner's] criminal conduct, at least in th[e] Court's eyes, are not reflected merely at the counts of conviction," but also involved threatening to use a firearm on the police officers on the day of his arrest. (Id. at 47-48). While never making a specific finding as to an increased drug amount attributable to Petitioner, the Court noted the Government's arguments for a higher drug amount and supervisory role enhancement, and concluded that it could consider these factors in its overall consideration of the nature and circumstances of the offense and in its need to deter Petitioner. (Id. at 52). The Court continued

that the offense level established by the sentencing guidelines did not "fully recognize the nature and circumstances of the offense and [Petitioner's] history of drug trafficking," and, therefore, the Court would "by analogy," as the Government suggested, vary upwardly to the range that would have applied based on a drug quantity of 476 grams of crack and a supervisory role enhancement. (Id.). The Court also considered Petitioner's prior convictions for drug trafficking and assault, as well as his numerous arrests for weapons and drug offenses, all of which "strongly suggest[ed] that there's a pattern of conduct here that [Petitioner] ha[s] been involved in criminal conduct most of [his] life." (Id. at 49-50). The Court then found that Petitioner's "good work [in his] post sentencing rehabilitative efforts" justified a sentence at the low end of the 235- to 293-month range that it was using "by analogy," and sentenced Petitioner to 240 months on Counts One and Two, to be served concurrently. (Id. at 54-56). The Court entered the judgment on August 6, 2012. (Id., Doc. No. 91: Amended Judgment).

        D.       The Fourth Circuit affirms Petitioner's sentence on appeal.

Petitioner appealed the sentence imposed at his re-sentencing hearing, contending that the district court's reliance on drug amount and a supervisory role violated the mandate rule and challenging the reasonableness of his sentence. See United States v. Shuff, 533 F. App'x. 251, 253 (4th Cir. 2013). The Fourth Circuit held that the mandate rule did not bar the district court from considering the Government's drug amount and supervisory role enhancement arguments at the resentencing hearing, explaining that the parties "lacked the opportunity or incentive to raise [those] issues" during the first sentencing hearing and appeal because of the statutory life sentence. Id. The court also affirmed the procedural and substantive reasonableness of the upward variance sentence. Id. at 254-55. The Fourth Circuit entered the mandate on August 9, 2013. (Id., Doc. No. 100).

E.     Petitioner seeks to vacate his sentence under § 2255.

Petitioner placed the petition in the prison system for mailing on June 16, 2014, and it was stamp-filed in this Court on June 20, 2014. He argues, first, that the sentence violated the Supreme Court's holding in United States v. Alleyne, 133 S. Ct. 2151, 2155 (2013), in that the jury found him responsible for 28 grams, while the Court held him responsible for 606.32 kilograms of drugs. See (Doc. No. 1 at 4). In his second ground, he alleges several instances of ineffective assistance of counsel concerning allegedly inaccurate information in the PSR, the failure to request a purity test for drugs, the failure to procure accurate transcripts of telephone calls, and counsel's turning over letters written by Petitioner to the Government, which Petitioner contends created an attorney-client conflict of interest. (Id. at 5). The Government filed the pending motion to dismiss on August 29, 2014. (Doc. No. 6). On September 2, 2014, this Court entered an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), giving Petitioner until September 19, 2014, to respond to the motion to dismiss. (Doc. No. 8). On September 12, 2014, Petitioner filed his brief in response to the Government's motion to dismiss. (Doc. No. 9).

**II. STANDARD OF REVIEW**

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits ad the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter and Respondent's motion to dismiss, the Court finds that the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

**III. DISCUSSION**

A. Petitioner's Claim Pursuant to Alleyne v. United States

In his first ground for relief, Petitioner contends that the jury found him responsible for 28 grams of crack cocaine but this Court sentenced him as though he had possessed more than 600 "kilograms,"[1] in violation of the Supreme Court's recent decision in Alleyne, in which the Court overruled its earlier decision in Harris v. United States, 536 U.S. 545 (2002), and held that any fact that increases the statutory mandatory minimum is an element of the offense and must be submitted to the jury and found beyond a reasonable doubt. Alleyne, 133 S. Ct. at 2155. Alleyne, however, was not in effect at the time of Petitioner's re-sentencing hearing and has not been made retroactively applicable to cases on collateral review.[2] See, e.g., United States v. Stewart, 540 Fed. App'x. 171, 172 (4th Cir. 2013) (noting that Alleyne has not been made retroactive on collateral review); cf. United States v. Strayhorn, 743 F.3d 917, 926 (4th Cir. 2014) (stating that Alleyne is applicable to cases pending on direct appeal). Accordingly, Petitioner's first claim for relief under Alleyne fails.

Next, to the extent Petitioner reasserts the mandate argument that he made on direct appeal (that the Government could not argue for a higher drug amount or supervisory enhancement), the Fourth Circuit has already decided this issue, and Petitioner may not relitigate it now. See Withrow v. Williams, 507 U.S. 680, 720-21 (1993) (Scalia, J., concurring) (collecting cases applying the bar to relitigation of issues decided on direct appeal).

---

[1] The Government notes in its brief that it is not clear whether Petitioner intended to write "kilograms" or "grams" in his petition.

[2] As the Government notes, Alleyne has no bearing on Petitioner's case because his advisory guideline range (131 to 162 months) was above the applicable statutory minimum in place at the time of the resentencing hearing, and Petition received an upward variance to 240 months of imprisonment, which was well above the statutory minimum. In other words, there was simply no increase in the statutory mandatory minimum in this action.

In sum, Petitioner's first ground for relief is without merit.

B. Petitioner's Claims of Ineffective Assistance of Counsel

In his second claim for relief, Petitioner alleges several instances of ineffective assistance of counsel. The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

Petitioner first contends that counsel failed to contest the use of inaccurate information in the PSR concerning drug amount and failed to request a purity test. He also claims, in conclusory fashion, that the drug amount was determined by relying improperly on informant testimony and uncharged conduct. Petitioner fails, however, to provide any facts supporting his conclusory contention that the drug amount was incorrect or that the drugs were insufficiently

9

pure. Moreover, it is well settled that the use of informant testimony and reliance on uncharged conduct is entirely appropriate in finding a drug amount for the purposes of sentencing. See, e.g., United States v. Crawford, 734 F.3d 339, 342 (4th Cir. 2013) (discussing types of evidence admissible at sentencing hearing). Petitioner's claim related to the drug amounts found for purposes of sentencing is without merit.

Petitioner also challenges counsel's alleged failure to procure accurate transcripts of seized telephone calls. Petitioner wholly fails, however, to point to any aspect of the transcript that was inaccurate. Similarly, Petitioner states that his counsel turned over "letters written by Petitioner causing attorney-client conflict of interest, providing information to government," but he fails to elaborate on what these letters were, what they contained, or how they prejudiced his case. These vague and conclusory allegations are simply insufficient to trigger the extraordinary relief contemplated in § 2255. See, e.g., Raines v. United States, 423 F.2d 526, 531 (4th Cir. 1970).

In sum, Petitioner's second ground for relief is without merit.

### IV. CONCLUSION

For the reasons stated herein, Petitioner's § 2255 petition is denied and dismissed, and the Government's Motion to Dismiss, (Doc. No. 6), is granted.

**IT IS THEREFORE ORDERED THAT**:

1. Petitioner's § 2255 motion, (Doc. No. 1), is denied and dismissed with prejudice.
2. The Government's Motion to Dismiss, (Doc. No. 6), is **GRANTED**.
3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell,

537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: September 29, 2014

Frank D. Whitney
Chief United States District Judge